**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Brian S. Schaffer
Frank J. Mazzaferro
475 Park Avenue South, 12th Floor
New York, New York 10016
Telephone: (212) 300-0375

JUDGE CASTEL

**13 CV 5184**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

CARLOS FLORES, HERMELINDO TENDILLA,
RAFAEL ALDAPE, and FRANCISCO DELAROSA-
ATLATENCO, on behalf of themselves and all others
similarly situated,

                        **Plaintiffs,**

    -against-

ONE HANOVER, LLC, PETER POULAKAKOS and
HARRY POULAKAKOS,

                        **Defendants.**

---

**CLASS ACTION
COMPLAINT**



      Plaintiffs Carlos Flores, Hermelindo Tendilla, Rafael Aldape, and Francisco Delarosa-
Atlatenco (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated,
as class representatives, upon personal knowledge as to themselves, and upon information and
belief as to other matters, allege as follows:

<u>**NATURE OF THE ACTION**</u>

      1.     This lawsuit seeks to recover minimum wages, overtime compensation, spread-of-
hours pay, misappropriated tips, unlawful deductions, and other wages for Plaintiffs and their
similarly situated co-workers – "tipped workers" – who work or have worked at Harry's Steak
House ("Harry's") located at 1 Hanover Square, New York, New York 10004.

      2.     Harry's is owned, operated, and controlled by One Hanover, LLC, Peter
Poulakakos, and Harry Poulakakos (collectively, "Defendants").

3.     Located in the heart of Manhattan's financial district, Harry's is considered a Wall Street institution. According to its website, Harry's was founded in 1972 by Harry Poulakakos. http://harrysnyc.com/about.cfm. In 2006, after being closed for several years, Harry Poulakakos' son, Peter Poulakakos, reopened the restaurant and turned his father's business into a restaurant empire. Id. Since Harry's reopening, Peter Poulakakos has opened 22 other well known restaurants in New York. Id. Despite initially closing the restaurant in 2003, Harry Poulakakos remains a consultant to his son and can be found at Harry's six days a week. Id.

4.     From in or around 2006 until 2011, Harry's considered itself two separate restaurants within the same physical location. In that regard, Harry's maintained a "Café area" and a "Steakhouse area." Although they maintained different menus and hours of operation, the two areas shared a kitchen, employees, and operated under the same policies and practices. In or around 2011, Harry's eliminated these invisible barriers.

5.     At all times relevant, Harry's has maintained payroll and human resources offices at 1 Hanover Square, New York, New York 10004.

6.     At all times relevant, Defendants have paid Plaintiffs a reduced, tipped minimum wage rate.  Defendants, however, have not satisfied the requirements under the Fair Labor Standards Act ("FLSA") or the New York Labor Law ("NYLL") by which they could take a tip credit towards the basic minimum hourly rate paid to Plaintiffs.

7.     Plaintiffs have been required to engage in a tip distribution scheme whereby tips are shared with Maître d's and/or Baristas, employees in positions that are not entitled to tips under the FLSA or the NYLL.  In that regard, prior to in or around 2011, Defendants allocated a portion of the mandatory tip pools at Harry's to Maître d's and Baristas. At Harry's, Maître d's acted as supervisory employees who exercised meaningful authority over subordinate employees

and therefore qualify as "employers" under the FLSA and NYLL. Such authority included, but was not limited to, hiring, firing, disciplining employees and making schedules. Baristas, on the one hand, were generally stationed out of view of customers and did not regularly interact with customers. In or around 2011, the Maître d position was removed from the tip pool, however, Baristas are still included in the tip pool during lunch service.

8.      As a result of this practice, tipped workers at Harry's have received overtime pay based on the improperly reduced minimum wage rate rather than overtime at one and one-half times the full minimum wage rate to which they are entitled.

9.      Further, when Plaintiffs made deliveries for Harry's, Defendants impermissibly withheld tips earned by Plaintiffs.

10.      Additionally, despite requiring tipped workers to punch in and out, Harry's maintained a policy and practice whereby tipped workers were not paid for all the hours that they have worked.  In that regard, Plaintiffs' paystubs have reflected less hours than they have actually worked.

11.      Harry's has also maintained a policy and practice whereby unlawful deductions are taken from Plaintiffs' wages. In that respect, Plaintiffs have been charged for mistakes made when taking customers' orders, breakages, and customer walkouts.

12.      Defendants have applied the same employment policies, practices, and procedures to all tipped workers at Harry's.

13.      Plaintiffs bring this action on behalf of themselves and similarly situated current and former tipped workers who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived

Plaintiffs and other similarly situated employees of their lawfully earned wages.

14.     Plaintiffs also bring this action on behalf of themselves and all similarly situated current and former tipped workers pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

### Plaintiffs

#### Carlos Flores

15.     Carlos Flores ("Flores") is an adult individual who is a resident of Astoria, New York.

16.     Flores was employed by Defendants from March 5, 2008 until June 17, 2013.

17.     From March 5, 2008 until in or around 2011, Flores was employed by Defendants as a server in the Steak House area of Harry's. During this time, Flores occasionally worked as a server within the Café area as well.

18.     From in or around 2011 until June 17, 2013, Flores was employed by Defendants as a captain at Harry's.

19.     Flores is a covered employee within the meaning of the FLSA and the NYLL.

20.     A written consent form for Flores is being filed with this Class Action Complaint.

#### Hermelindo Tendilla

21.     Hermelindo Tendilla ("Tendilla") is an adult individual who is a resident of Jackson Heights, New York.

22.     Tendilla has been employed by Defendants from in or around March 2009 through the present.

23.     From in or around March 2009 until May 2009, Tendilla was employed by Defendants as a cook in the Steak House and Café areas of Harry's.

24.     From in or around May 2009 until 2011, Tendilla was employed by Defendants as a busser in the Café area of Harry's.

25.     From in or around 2011 through the present, Tendilla has been employed by Defendants as a barback.

26.     Tendilla is a covered employee within the meaning of the FLSA and the NYLL.

27.     A written consent form for Tendilla is being filed with this Class Action Complaint.

**Rafael Aldape**

28.     Rafael Aldape ("Aldape") is an adult individual who is a resident of New York, New York.

29.     Aldape was employed by Defendants, as a runner, busser, and delivery person from in or around March 2007 until July 12, 2013.

30.     From in or around March 2007 until 2011, Aldape worked in both the Steak House and Café areas of Harry's.

31.     Aldape is a covered employee within the meaning of the FLSA and the NYLL.

32.     A written consent form for Aldape is being filed with this Class Action Complaint.

**Francisco Delarosa-Atlatenco**

33.     Francisco Delarosa-Atlatenco ("Delarosa") is an adult individual who is a resident of Queens, New York.

- 5 -

34.     Delarosa has been employed by Defendants as a busser and delivery person from in or around December 2011 through the present.

35.     Delarosa is a covered employee within the meaning of the FLSA and the NYLL.

36.     A written consent form for Delarosa is being filed with this Class Action Complaint.

**Defendants**

37.     Defendants jointly employed Plaintiffs and similarly situated employees at all times relevant.

38.     Each Defendant has had substantial control over Plaintiffs' and similarly situated employees working conditions, and over the unlawful policies and practices alleged herein.

39.     Defendants are part of a single integrated enterprise that jointly employed Plaintiffs and similarly situated employees at all times relevant.

40.     Defendants' operations are interrelated and unified.

41.     During all relevant times, Harry's shared a common management and was centrally controlled and/or owned by Defendants.

**One Hanover, LLC**

42.     Together with the other Defendants, One Hanover, LLC ("One Hanover") has owned and/or operated Harry's during the relevant period.

43.     One Hanover is a domestic business corporation organized and existing under the laws of New York.

44.     One Hanover's principal executive office is located at 1 Hanover Square, New York, New York 10004.

45.     One Hanover is the corporate entity that appeared on Plaintiffs' paychecks.

46.     One Hanover is a covered employer within the meaning of the FLSA and the

NYLL, and, at all times relevant, employed Plaintiffs and similarly situated employees.

47.     At all relevant times, One Hanover maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

48.     One Hanover applied the same employment policies, practices, and procedures to all tipped workers, including policies, practices, and procedures with respect to payment of minimum wage, overtime compensation, spread-of-hours pay, tips, and the making of unlawful deductions.

49.     Upon information and belief, at all relevant times, One Hanover's annual gross volume of sales made or business done was not less than $500,000.00.

**Peter Poulakakos**

50.     Together with the other Defendants, Peter Poulakakos owned and/or has operated Harry's during the relevant period.

51.     Peter Poulakakos' office is located on the fourth floor of Harry's, 1 Hanover Square, New York, New York 10004.

52.     Peter Poulakakos is the Chairman and Chief Executive of One Hanover. Peter Poulakakos is identified as a "Principal" of One Hanover on the active New York State Liquor Authority License for Harry's.

53.     Peter Poulakakos is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiffs and similarly situated employees.

54.     At all relevant times, Peter Poulakakos has had the power over personnel decisions at Harry's, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

55.     At all relevant times, Peter Poulakakos has had power over payroll decisions at

Harry's, including the power to retain time and/or wage records.

56.    At all relevant times, Peter Poulakakos has been actively involved in managing the day-to-day operations of Harry's.

57.    At all relevant times, Peter Poulakakos has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

58.    At all relevant times, Peter Poulakakos has had the power to transfer the assets and/or liabilities of One Hanover and Harry's.

59.    At all relevant times, Peter Poulakakos has had the power to declare bankruptcy on behalf of One Hanover and Harry's.

60.    At all relevant times Peter Poulakakos has had the power to close, shut down, and/or sell Harry's.

61.    At all relevant times, Peter Poulakakos has had the power to enter into contracts on behalf of One Hanover and Harry's.

62.    Peter Poulakakos is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

**Harry Poulakakos**

63.    Together with the other Defendants, Harry Poulakakos owned and/or operated the Harry's located at 1 Hanover Square, New York, New York 10004, during the relevant period.

64.    Harry Poulakakos' office is located on the fourth floor of Harry's, 1 Hanover Square, New York, New York 10004.

65.    Harry Poulakakos is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiffs and similarly situated employees.

66.    At all relevant times, Harry Poulakakos has had the power over personnel

decisions at Harry's, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

67.     At all relevant times, Harry Poulakakos has had power over payroll decisions at Harry's, including the power to retain time and/or wage records.

68.     At all relevant times, Harry Poulakakos has been actively involved in managing the day-to-day operations of Harry's.

69.     At all relevant times, Harry Poulakakos has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

70.     At all relevant times, Harry Poulakakos has had the power to transfer the assets and/or liabilities of One Hanover and Harry's.

71.     At all relevant times, Harry Poulakakos has had the power to declare bankruptcy on behalf of One Hanover and Harry's.

72.     At all relevant times Harry Poulakakos has had the power to close, shut down, and/or sell Harry's.

73.     At all relevant times, Harry Poulakakos has had the power to enter into contracts on behalf of One Hanover and Harry's.

74.     Harry Poulakakos is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

## JURISDICTION AND VENUE

75.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

76.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

77.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

78.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

### COLLECTIVE ACTION ALLEGATIONS

79.     Plaintiffs bring the First and Second Causes of Action, FLSA claims, on behalf of themselves and all similarly situated current and former tipped workers at Harry's who elect to opt-in to this action (the "FLSA Collective").

80.     Defendants are liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiffs and the FLSA Collective.

81.     Consistent with Defendants' policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid minimum wages for all hours worked and premium overtime compensation for all hours worked beyond 40 per workweek.

82.     All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

83.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

(a)     willfully failing to pay its employees, including Plaintiffs and the FLSA Collective, the appropriate minimum wages for all hours worked and premium overtime wages for hours worked in excess of 40 hours per workweek; and

(b)    willfully failing to record all of the time that its employees, including Plaintiffs and the FLSA Collective, have worked for the benefit of Defendants.

84.    Defendants' unlawful conduct, as described in this Class Action Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly compensate employees for record the hours they work.

85.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all of the hours they worked.

86.    Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

87.    Plaintiffs and the FLSA Collective perform or performed the same primary duties.

88.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

89.    There are many similarly situated current and former tipped workers who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.  This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

90.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

91.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

92.    Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of

themselves and a class of persons consisting of:

> All persons who work or have worked as tipped workers at
> Harry's Steak House in New York between July 25, 2007
> and the date of final judgment in this matter (the "Rule 23
> Class").

93.     Excluded from the Rule 23 Class are Defendants, Defendants' legal
representatives, officers, directors, assigns, and successors, or any individual who has, or who at
any time during the class period has had, a controlling interest in Defendants; the Judge(s) to
whom this case is assigned and any member of the Judges' immediate family; and all persons
who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

94.     The members of the Rule 23 Class are so numerous that joinder of all members is
impracticable.

95.     Upon information and belief, the size of the Rule 23 Class is at least 50
individuals.  Although the precise number of such employees is unknown, the facts on which the
calculation of that number depends are presently within the sole control of Defendants.

96.     Defendants have acted or have refused to act on grounds generally applicable to
the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding
declaratory relief with respect to the Rule 23 Class as a whole.

97.     Common questions of law and fact exist as to the Rule 23 Class that predominate
over any questions only affecting them individually and include, but are not limited to, the
following:

    (a)     whether Defendants violated NYLL Articles 6 and 19, and the supporting New
York State Department of Labor Regulations;

    (b)     whether Defendants failed to pay Plaintiffs and the Rule 23 Class minimum
wages for all of the hours they worked;

    (c)     whether Defendants correctly compensated Plaintiffs and the Rule 23 Class for
hours worked in excess of 40 hours per workweek;

(d)     whether Defendants failed to provide Plaintiffs and the Rule 23 Class spread-of-hours pay when the length of their workday was greater than 10 hours;

(e)     whether Defendants misappropriated tips from Plaintiffs and the Rule 23 Class by demanding, handling, pooling, counting, distributing, accepting, and/or retaining tips and/or service charges paid by customers that were intended for Plaintiffs and the Rule 23 Class, and which customers reasonably believed to be gratuities for Plaintiffs and the Rule 23 Class;

(f)     whether Defendants distributed or retained a portion of the tips paid by customers to workers who are not entitled to receive tips under the NYLL;

(g)     whether Defendants made deductions from wages paid to Plaintiffs and the Rule 23 Class that were not authorized or required by law;

(h)     whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Rule 23 Class, and other records required by the NYLL;

(i)     whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance, as required by the NYLL;

(j)     whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with wage notices, as required by the NYLL;

(k)     whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(l)     the nature and extent of class-wide injury and the measure of damages for those injuries.

98.     The claims of Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and all of the Rule 23 Class members work, or have worked, for Defendants as tipped workers at the Ainsworth Bars in New York.  Plaintiffs and the Rule 23 Class members enjoy the same statutory rights under the NYLL, including to be properly compensated for all hours worked, to be paid spread-of-hours pay, to retain customer tips, to be reimbursed for uniform-related expenses, and to not have unlawful deductions made from their wages. Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result

of Defendants' failure to comply with the NYLL.  Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

99.   Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.  Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately.  Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class just as they would represent and consider their own interests.  Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over the class.  Plaintiffs recognize that any resolution of a class action must be in the best interest of the class.  Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial.  Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.  There is no conflict between Plaintiffs and the Rule 23 members.

100.   In recognition of the services Plaintiffs have rendered and will continue to render to the Rule 23 Class, Plaintiffs will request payment of a service award upon resolution of this action.

101.   A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual Rule 23 Class members are not *de minimis*, such damages are small compared to the

expense and burden of individual prosecution of this litigation. The individual Plaintiffs lack the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

102.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## PLAINTIFFS' FACTUAL ALLEGATIONS

103.    Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Carlos Flores**

104.    Defendants did not pay Flores the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that he was suffered or permitted to work each workweek.

105.    Flores received weekly paychecks from Defendants that did not properly record, or compensate him for, all of the hours he worked.

106.    Defendants applied a tip credit to Flores' wages, rather than pay Flores the full minimum wage rate.

107.    Defendants did not provide Flores with notification of the tipped minimum wage or tip credit provisions of the FLSA or NYLL, or their intent to apply a tip credit to Flores' wages.

108.    Defendants suffered or permitted Flores to work over 40 hours per week as a server and captain, up to a maximum of approximately 52 hours per week. Defendants did not compensate Flores at the proper overtime rate for all of the hours he worked in excess of 40 per workweek.

109.    Defendants did not pay Flores one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of her workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

110.    Defendants did not allow Flores to retain all of the tips he earned.

111.    Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that Flores earned.

112.    Defendants imposed upon Flores a tip redistribution scheme to which he never agreed.

113.    Defendants unlawfully redistributed part of Flores' tips to employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL, including, but not limited to, Maître d's and Baristas.

114.    Defendants made unlawful deductions from Flores' wages, including, but not limited to, deductions for mistakes when taking customer orders and customer walkouts.

115.    Defendants did not keep accurate records of wages or tips earned, or of hours worked by Flores.

116.    Defendants failed to furnish Flores with annual wage notices.

117.    Defendants failed to furnish Flores with accurate statements of wages, hours worked, rates paid, gross wages and the claimed tip allowance.

**Hermelindo Tendilla**

118.    Defendants did not pay Tendilla the proper minimum wages, overtime wages, and spread-of-hours pay for all of the time that he was suffered or permitted to work each workweek.

119.   Tendilla received weekly paychecks from Defendants that did not properly record, or compensate him for, all of the hours he worked.

120.   Defendants applied a tip credit to Tendilla's wages, rather than pay Tendilla the full minimum wage rate.

121.   Defendants did not provide Tendilla with notification of the tipped minimum wage or tip credit provisions of the FLSA or NYLL, or their intent to apply a tip credit to Tendilla's wages.

122.   Defendants suffered or permitted Tendilla to work over 40 hours per week as a busser and barback, up to a maximum of approximately 50 hours per week.  Defendants did not compensate Tendilla at the proper overtime rate for all of the hours he worked in excess of 40 per workweek.

123.   Defendants did not pay Tendilla one additional hour of pay at the basic minimum hourly rate for all of the times that the length of the interval between the beginning and end of her workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

124.   Defendants did not allow Tendilla to retain all of the tips he earned.

125.   Defendants unlawfully demanded, handled, pooled, counted, distributed, accepted, and/or retained portions of the tips that Tendilla earned.

126.   Defendants imposed upon Tendilla a tip redistribution scheme to which he never agreed.

127.   Defendants unlawfully redistributed part of Tendilla's tips to employees who are in positions that are not entitled to tips under the FLSA and/or the NYLL, including, but not limited to, Maître d's and Baristas.