# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS FLORES, HERMELINDO TENDILLA, RAFAEL ALDAPE, and FRANCISCO DELAROSA-ATLATENCO, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> ONE HANOVER, LLC, PETER POULAKAKOS and HARRY POULAKAKOS, <br><br> Defendants. | JOINT SETTLEMENT AGREEMENT AND RELEASE <br><br> 13 Civ. 5184 |

This Joint Settlement Agreement and Release (collectively, the "Agreement"), is entered into by and between Plaintiffs (as hereinafter defined), the Class Members (as hereinafter defined) that they seek to represent, and Defendants (as hereinafter defined).

## RECITALS

WHEREAS, Carlos Flores, Hermelindo Tendilla, Rafael Aldape, and Francisco Delarosa-Atlatenco filed a Class/Collective Action Complaint on July 25, 2013 against One Hanover, LLC, Peter Poulakakos and Harry Poulakakos; and

WHEREAS, the Class/Collective Action Complaints in the Litigation asserted claims against Defendants seeking damages on behalf of all Class Members allegedly currently or formerly employed by Defendants; and

WHEREAS, the Class/Collective Action Complaints in the Litigation sought recovery of attorneys' fees and costs, as well as injunctive and declaratory relief; and

WHEREAS, Defendants deny, and continue to deny, all of the procedural and substantive allegations made by Plaintiffs in the Litigation, and have denied, and continue to deny, that they are at fault, committed any wrongdoing or are liable or owe damages, fees or costs, to anyone with respect to the alleged facts, causes of action or allegations asserted in the Litigation to any Plaintiff and Class Member;

WHEREAS, the Defendants desire to settle and terminate the claims that were or might or could have been made in the Litigation against the Defendants solely to avoid further lengthy and time-consuming litigation and the burden, inconvenience and expense associated therewith;

WHEREAS, Class Counsel (as hereinafter defined) has investigated and prosecuted this case, including, but not limited to, interviewing putative class members, reviewing documents produced by Plaintiffs and Defendants, reviewing and analyzing payroll and tip allocation data relating to the Class Members' alleged damages, and engaging in substantial settlement efforts with Defendants; and

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on Plaintiffs and the Class Members; and

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery whatsoever for the Class Members, or might result in a recovery that is less favorable to the Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interests of the Class Members.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

1.  **DEFINITIONS**

    The defined terms set forth herein shall have the meanings ascribed to them below:

    1.1  **Plaintiffs.** "Plaintiffs" shall refer to the named plaintiffs in this Litigation, Carlos Flores, Hermelindo Tendilla, Rafael Aldape, and Francisco Delarosa-Atlatenco and shall also include any and all of their representatives, heirs, administrators, executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

    1.2  **Defendants.** "Defendants" shall refer to the named defendants in this Litigation, One Hanover, LLC, Peter Poulakakos and Harry Poulakakos and shall also include, individually and collectively, any and all of their representatives, directors, officers, managers, employees, representatives, shareholders, members, heirs, administrators, executors, beneficiaries, agents, and assigns of all such individuals and entities, as applicable and without limitation.

    1.3  **Harry's.** "Harry's" shall refer to defendant One Hanover, LLC.

    1.4  **P Poulakakos.** "P Poulakakos" shall refer to defendant Peter Poulakakos.

    1.5  **H Poulakakos.** "H Poulakakos" shall refer to defendant Harry Poulakakos.

1.6    **Tipped Workers.** "Tipped Workers" shall refer to individuals working at One Hanover, LLC as Servers, Bartenders, Runners, Barbacks, Captains, Delivery Persons, and Bussers and similarly situated employees.

1.7    **FLSA Class Members.** "FLSA Class Members" shall refer to all:

    (A)    Tipped Workers working between July 25, 2010 and December 31, 2013 who submit a Consent to Become A Party Plaintiff form; and

1.8    **NYLL Class Members.** "NYLL Class Members" shall be defined as

    (A)    Tipped Workers who:

        (1)    work or have worked at Harry's between July 25, 2007 and December 31, 2013; and

        (2)    do not timely opt-out of the New York Labor Law claims brought pursuant to the Litigation as set forth in Section 2.4.

1.9    **Class Members.** "Class Members" shall be defined as all FLSA Class Members and NYLL Class Members.

1.10    **Claims Administrator.** "Claims Administrator" shall refer to the claims administrator selected by Plaintiffs, with Defendants' counsel's consent, pursuant to the terms of this Agreement.

1.11    **Class Notice.** "Class Notice" shall refer to the form of notice jointly submitted by the parties and approved by the Court advising the Class Members of this Agreement, and of their opportunity to opt-in and/or opt-out of same.

1.12    **Class Counsel.** "Class Counsel" shall refer to Fitapelli & Schaffer, LLP. For purposes of providing any notices required under this Agreement, Class Counsel shall refer to Brian Schaffer, Fitapelli & Schaffer, LLP, 475 Park Avenue South, 12th Floor, New York, New York 10016, bschaffer@fslawfirm.com.

1.13    **Defendants' Counsel.** "Defendants' Counsel" shall refer to Proskauer Rose LLP. For purposes of providing any notices required under this Agreement, Defendants' Counsel shall refer to Steven D. Hurd and Harris M. Mufson, Eleven Times Square, New York, NY 10036, shurd@proskauer.com and hmufson@proskauer.com, respectively.

1.14    **Court.** "Court" shall refer to the United States District Court for the Southern District of New York, the Honorable Andrew J. Peck presiding.

1.15    **Effective Date.** "Effective Date" shall refer to the date that all of the following have occurred:

(A)    The Court has issued its Order Granting Final Approval;

(B)    The Court has ruled on all of the motions for awards of service payments for Plaintiffs pursuant to Section 3.3 and for attorneys' fees and reasonable costs pursuant to Section 3.2; and

(C)    The Agreement has become "Final" which is the later of:

        (1)    Thirty calendar days following the Court's entry of its Order Granting Final Approval if there are no appeals; or

        (2)    If rehearing, reconsideration or appellate review of the Agreement and/or Order Granting Final Approval is sought, after any and all avenues of rehearing, reconsideration or appellate review have been exhausted and no further rehearing, reconsideration or appellate review is permitted, and the time for seeking such review has expired.

1.16    **Qualified Settlement Fund.** "Qualified Settlement Fund" shall mean an escrow account administered and/or controlled by the Claims Administrator.

1.17    **Fairness Hearing.** "Fairness Hearing" shall mean the hearing on the Motion for Judgment and Final Approval.

1.18    **Litigation.** "Litigation" shall mean, *Flores, et al. v. One Hanover LLC d/b/a Harry's Café and Steak, et al.* 13 Civ. 5184 (AJP) pending in the United States District Court for the Southern District of New York.

1.19    **Complaint.** "Complaint" shall refer to the Class Action Complaint filed by Plaintiffs on July 25, 2013.

1.20    **Gross Settlement Payment.** "Gross Settlement Payment" shall mean the total settlement payment to be paid by Defendants in connection with this Agreement.

1.21    **Net Settlement Payment.** "Net Settlement Payment" shall mean the remainder of the Gross Settlement Payment after deducting: (a) the court-approved attorneys' fees and costs as described in Section 3.2; (b) the court-approved service payments to Plaintiffs as described in Section 3.3. and (c) settlement administration fees.

1.22    **Order Granting Final Approval.** "Order Granting Final Approval" shall mean the final Order entered by the Court after the Fairness Hearing.

1.23    **Order Granting Preliminary Approval.** "Order Granting Preliminary Approval" shall mean the Order entered by the Court certifying the NYLL Class

for settlement purposes only and preliminarily approving, *inter alia,* the terms and conditions of this Agreement, the content of the parties' proposed Class Notice (attached hereto as Exhibit A), the manner and timing of providing the Class Notice, and the time period for opt-outs and objections.

1.24    **Parties.** "Parties" shall mean, collectively, Plaintiffs, the Class Members, and Defendants.

## 2.     APPROVAL AND CLASS NOTICE

2.1    **Retention of Claims Administrator.** Within a reasonable time after the execution of this Agreement, Plaintiffs shall retain the Claims Administrator of its choice (with Defendants' counsel's consent) to administer the claims process based on the terms contained herein. The Claims Administrator shall be responsible for: (a) administering the Class Notice process; (b) calculating the individual settlement payment to be paid to each Class Member from the Gross Settlement Payment based on the Parties' agreed-upon formula; (c) calculating the taxes to be withheld from the settlement payment paid to each Class Member; (d) cutting and sending out each of the settlement checks to be paid to each Plaintiff and Class Member and to Class Counsel, and any tax withholding payments to be made on their behalf; and (e) reporting to Defendants' Counsel and Class Counsel in the form of a distribution summary following each of the four payment distributions. The Claims Administrator shall consult with Plaintiffs' Counsel, Defendants' Counsel, and Defendants' owners, managers, accounting staff, tax advisors, and financial advisors as needed to effectuate its obligations pursuant to this Agreement. The Claims Administrator shall also issue to Class Counsel and Defendants' Counsel a distribution summary following each of the four payment distributions. Fees charged by the Claims Administrator shall be paid from the Settlement Fund.

2.2    **Preliminary Approval by the Court.** Within 7 business days after the execution of this Agreement, Plaintiffs will file a motion with the Court seeking an Order Granting Preliminary Approval, as defined above. If the Court denies this motion for whatever reason, the Litigation will resume unless the Parties jointly agree to seek reconsideration of the ruling or seek Court approval of a renegotiated settlement. If the Litigation resumes, the case will proceed as if no settlement had been attempted, and Defendants reserve and retain the right to contest whether this case should be maintained as a class action and to contest the merits of the claims being asserted by Plaintiffs in this Litigation. In such a case, the Parties will negotiate and submit for Court approval a revised scheduling order and civil case management plan.

2.3    **Class Notice**

(A)   Within 10 business days after the Court issues its Order Granting Preliminary Approval, Defendants will provide: (1) the designated Claims Administrator with a list of the names, last known addresses, social security number and weeks worked of all the putative Class Members to the extent that these records are available; and (2) Class Counsel with a list of the names, last known addresses, and weeks worked of all the putative Class Members to the extent that these records are available.

(B)   Within 30 calendar days of receiving the Class Member list referenced in Section 2.3(A) above, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, the Court-approved Class Notice to all putative Class Members using the last known addresses set forth in Defendants' records.   The Claims Administrator shall take reasonable steps, including a skip-trace to obtain the correct addresses of the Class Members for whom the notices are returned by the post office as "undeliverable" and shall attempt re-mailings as described below.   The Claims Administrator shall notify Class Counsel and Defendants' Counsel of any mail sent to Class Members that is returned as undeliverable after the first mailing as well as any such mail returned as undeliverable after any subsequent mailing(s) as set forth in Section 2.4. The Claims Administrator shall provide all Parties with information related to the administration of the settlement upon request.

2.4   **NYLL Class Member Opt-Out.**

(A)   Any putative NYLL Class Member may request exclusion from the NYLL Class by "opting out."  As stated in the Class Notice, any putative NYLL Class Member who chooses to "opt out" must mail a written, signed statement to the Claims Administrator that he or she is opting out of this Agreement ("Opt-Out Statement").    To be effective, such Opt-Out Statements must be postmarked within 45 calendar days after the date the Claims Administrator mails the Notice ("Opt-Out Period").   The 45 day period will begin to run from the date of the first mailing, except for those putative Class Members whose first mailings are returned to the Claims Administrator as undeliverable, in which case the 45-day Opt-Out Period for any such putative Class Member will begin to run from the date of any second mailing.   The Claims Administrator shall not attempt more than two mailings of the Class Notice to any putative Class Member.   The Claims Administrator shall, within five (5) calendar days after any mailing to one or more Class Members, provide to Class Counsel by email:  (1) a list of the Class Members being sent the Class Notice; and (2) the precise date of the end of the Opt-Out Period for these Class Members.

(B)     The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-Out Statement on Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator also shall, within 3 calendar days of the end of the Opt-Out Period, file with the Clerk of Court, stamped copies of any Opt-Out Statements. The Claims Administrator shall, within 24 hours of the end of each Opt-Out Period, send an updated list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by email. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(C)     A putative NYLL Class Member who does not opt out pursuant to this Section 2.4 will be deemed eligible for a payment hereunder, subject to the release set forth in Section 4.1. Payments will be made by check issued by the Claims Administrator. The release provisions set forth in Section 4.1 shall be effective as to all NYLL Class Members whether their settlement checks are cashed or not.

2.5     **FLSA Opt-ins**

(A)     In order to receive the FLSA portion of the settlement, a putative Plaintiff must return the FLSA Consent to Sue Form attached to the Class Notice. To be effective, such Opt-in forms must be postmarked within 45 calendar days after the date the Claims Administrator mails the Notice ("Opt-in Period"). The 45 day period will begin to run from the date of the first mailing, except for those putative Class Members whose first mailings are returned to the Claims Administrator as undeliverable, in which case the 45-day Opt-in Period for any such putative Class Member will begin to run from the date of any second mailing. The Claims Administrator shall not attempt more than two mailings of the Class Notice to any putative Class Member. The Claims Administrator shall, within five (5) calendar days after any mailing to one or more Class Members, provide to Class Counsel by email:  (1) a list of the Class Members being sent the Class Notice; and (2) the precise date of the end of the Opt-in Period for these Class Members.

(B)     The Claims Administrator shall stamp the postmark date on the original of each Opt-in form that it receives and shall serve copies of each Opt-in form on Class Counsel and Defendants' Counsel not later than 3 calendar days after receipt thereof. The Claims Administrator also shall, within 3 calendar days of the end of the Opt-in Period, file with the Clerk of Court,

stamped copies of any Opt-in forms.  The Claims Administrator shall, within 24 hours of the end of each Opt-in period, send an updated list of all Opt-in forms to Class Counsel and Defendants' Counsel by email.  The Claims Administrator shall retain the stamped originals of all Opt-in forms and originals of all envelopes accompanying Opt-in forms in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(C)     A payment for the FLSA portion of the settlement and FLSA release shall only apply to Class Members who timely file an FLSA opt-in form.

2.6     **Objections to Settlement.**

(A)     Class Members who wish to present objections to this Agreement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be received by the Claims Administrator during the Opt-Out Period.  The Claims Administrator shall stamp the date received on the original of each objection, and send copies of each objection to Class Counsel and Defendants' Counsel by email no later than three (3) calendar days after receipt thereof.  The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within three (3) calendar days after the end of the Opt-Out Period.

(B)     An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector.  An objector who wishes to appear at the Fairness Hearing must state his/her intention to do so at the time he/she submits his/her written objections.   An objector may withdraw his/her objections at any time. No Class Member may appear at the Fairness Hearing unless he/she has filed a timely objection that complies with the procedures provided in Section 2.5(A).  Any NYLL Class Member who has submitted an Opt-Out Statement may not submit objections to the settlement.  If any NYLL Class Member who submits an Opt-Out Statement also submits an objection to the settlement, the Opt-Out Statement shall control, and the objection shall not be considered by the Court.

(C)     The Parties may file with the Court their written responses to any filed objections not later than ten (10) calendar days before the Fairness Hearing.

2.7     **Motion for Judgment and Final Approval.**  Not later than fifteen (15) calendar days before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.   The Fairness Hearing shall be held at the Court's convenience.

8

2.8 **Entry of Judgment.** At the Fairness Hearing, the Parties will request that the Court, among other things: (a) finally certify the FLSA Class and NYLL Class for purposes of settlement only; (b) enter Judgment in accordance with this Agreement; (c) approve the Agreement as final, fair, reasonable, adequate, and binding on all NYLL Class Members who have not timely opted out pursuant to Section 2.4(A) and all FLSA Class Members who have timely opted in; (d) dismiss the Litigation with prejudice; and (e) enter an order permanently enjoining all bound Class Members from pursuing and/or seeking to reopen claims that have been released by this Agreement.

2.9 **Effect of Failure to Grant Final Approval.** In the event the Court denies Plaintiffs' Motion for Judgment and Final Approval or such Judgment does not become final and effective for any other reason whatsoever, the Parties shall proceed as follows: The Litigation will resume unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(A) The Litigation will proceed as if no settlement had been attempted. In that event, Defendants shall retain the right to contest whether this Litigation should be maintained as a class and/or collective action and to contest the merits of the claims being asserted by Plaintiffs in this Litigation. In such a case, the Parties will negotiate and submit for Court approval a revised scheduling order and civil case management plan.

(B) Class Counsel, at its own expense, shall provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement. Such notice shall be mailed by Class Counsel via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Court-approved Class Notice.

(C) The Gross Settlement Payment shall be returned to Defendants in full from the Claims Administrator.

3. **SETTLEMENT TERMS**

3.1 **Settlement Payments From the Gross Settlement Payment.**

(A) Defendants agree to make a Gross Settlement Payment of $600,000.00, which shall fully resolve and satisfy any and all amounts to be paid to the Class Members, inclusive of any court-approved service payments to Plaintiffs, any claim for attorneys' fees and costs approved by the Court and the Settlement Administrator's fees. Defendants will not be required

9

to pay more than its Gross Settlement Payment of $600,000.00 in connection with this Agreement, except that Defendants shall pay any payroll taxes incurred as a result of the settlement.

(B)    Defendants shall deposit the entire Gross Settlement Payment of $600,000.00 in a Qualified Settlement Fund maintained and/or controlled by the Claims Administrator within 10 business days after Preliminary Approval.

(C)    Within 15 calendar days after the Effective Date the Claims Administrator will distribute the Gross Settlement Payment by making the following payments:

    (1)    Paying Class Counsel its Court-approved fees as described in Section 3.2(A);

    (2)    Reimbursing Class Counsel for its Court-approved costs and expenses as described in Section 3.2(A);

    (3)    Paying the Court-approved service payments to Plaintiffs as described in Section 3.3;

    (4)    Paying the Class Members their individual settlement payments as described in Section 3.4.

(D)    If the payments to the Plaintiffs and Class Members as described in Sections 3.1, 3.2, 3.3 and 3.4 are not cashed within 150 calendar days of the check date, the Claims Administrator will place a stop-pay order on those checks. All unclaimed funds shall be re-deposited into the Claims Administrator's Qualified Settlement Fund and shall revert back to Defendants. In addition, all settlement funds allocated to Class Members who do not submit a Consent to Become A Party Plaintiff form shall revert back to Defendants. This section is a material provision of the Agreement. If the Court does not approve the reversion of any remaining portion of the Settlement Fund, Defendants shall have the right to re-negotiate any other terms of the settlement or terminate the Agreement.

3.2    **Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    At the Fairness Hearing, Class Counsel shall petition the Court for no more than 33 1/3% of the Gross Settlement Fund as an award of attorneys' fees. In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the Gross Settlement Fund, which shall not exceed $10,000.00. Defendants will not oppose such a fee and cost application. Defendants shall take no position on Class Counsel's

petition for fees and costs within the context of this Agreement, except to the extent Class Counsel's position is in any way inconsistent with the terms of this Agreement.

(B) The substance of Class Counsel's application for attorneys' fees and costs pursuant to this Agreement is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement, extinguish any Party's obligations under this Agreement, or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

3.3     **Service Payments To Plaintiffs.** At the Fairness Hearing, Plaintiffs will apply to the Court to receive settlement payments from the Gross Settlement Payment for services rendered to the Class. Plaintiffs will apply to the Court for no more than $3,000 each. Defendants will not oppose such applications, except to the extent Class Counsel's position is in any way inconsistent with the terms of this Agreement. These service payments, and the requirements for obtaining such payments, are separate and apart from, and in addition to, other recovery to which these Plaintiffs might be entitled, and other requirements for obtaining such recovery, under other provisions of this Agreement. The substance of the above-referenced application for service awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for service payments shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Judgment and Final Approval.

3.4     **Distribution to Class Members.**

(A) The Net Settlement Payment shall be distributed to all Class Members, subject to the release set forth in Section 4.1 below, according to the following formula:

(1) Compute the total number of weeks worked by each Tipped Worker between July 25, 2007 and December 31, 2013, and assign 1 point per week worked from July 25, 2007 and December 31, 2013.

(2) To calculate each Class Member's proportionate share:

11

(a)  Add all points for all Class Members together to obtain the "Total Denominator";

(b)  Divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's "Portion of the Net Settlement Payment";

(c)  Multiply Each Class Member's Portion of the Net Settlement Payment by the Net Settlement Fund to determine each Class Member's "Settlement Award."

(3)  Half of the Individual Class Members' allocations shall be applied to settlement of each Class Members' NYLL Claims, with the balance to be applied to the FLSA claims. If a Class Member does not opt-in to the FLSA settlement, such class member shall not receive the portion attributed to the FLSA claims and the portion attributed to the Class Member's FLSA claims shall revert back to Defendants.

(B)  Defendants shall not oppose the formula set forth in Section 3.4(A) above, except to the extent the formula is in any way inconsistent with the terms of this Agreement.

(C)  The Claims Administrator shall calculate the amount to be paid to each Class Member based on this formula, and its determinations regarding the amount to be paid to each Class Member shall be final, binding, and not subject to challenge by the Parties, Class Counsel or Defendants' Counsel, except as expressly provided below. The only aspect of the settlement calculations which may be challenged by the Class Members is the number of pay periods credited to them pursuant to 3.4(A) above. Any such challenge must be supported by official payroll records issued by Defendants which conclusively demonstrate otherwise. Class Members may not challenge the number of pay periods credited to them without such supporting documentation. If the Claims Administrator determines, in its sole discretion, that the number of pay periods credited to the challenging Class Member is incorrect based on the documentary proof provided, it shall adjust the settlement payment calculations accordingly. Any such challenge must be made during the Opt-Out Period, or the right to submit such a challenge shall be forever waived. Nothing herein limits Class Members' rights to object to the settlement pursuant to Section 2.5 or to opt-out of the settlement pursuant to Section 2.4.

(D)  The Claims Administrator shall also calculate, withhold, and make payment for the employee's share of the amount of taxes to be withheld

12

from the Wage Payment portion of each Class Member's settlement payment (as defined below).

(E)  The Claims Administrator shall mail to all Class Members their proportionate share of the Net Settlement Payment (less any taxes withheld) within fifteen (15) calendar days of the Effective Date.

3.5  **Taxability of Settlement Payments.**

(A)  Plaintiffs, on behalf of the Class Members, acknowledge and agree that they have not relied upon any advice whatsoever from Defendants or Defendants' Counsel as to any provision of this Agreement, as to the taxability, whether pursuant to federal, state or local income tax statutes or regulations or otherwise of the payments made, actions taken, or consideration transferred hereunder and that each Class Member shall be solely responsible for the reporting and payment of any federal, state and/or local income or employment taxes (including penalties and interest) on the payments described above.

(B)  It is agreed and understood that 25% of the settlement payment issued to each Class Member shall cover that Class Member's claim for wages ("Wage Payment"), and shall be subject to tax withholding and/or reporting as required by federal, state and local law.  Defendants shall report the Wage Payment portion of the settlement payment to the Internal Revenue Service (and other relevant government agencies) as wage income in the year of payment on a Form W-2 or similar form issued in accordance with the Class Member's W-4 currently on file.  Defendants shall pay the employer's share of any taxes owed with respect to each Class Member's Wage Payment (this share to be taken out of the Gross Settlement Payment).

(C)  It is agreed and understood that 75% of the settlement payment issued to each Class Member shall cover that Class Member's claim for liquidated damages, interest, and other non-wage related claims ("Non-Wage Payment"), and shall be made without tax withholdings.  Each Class Member shall receive a Form 1099 in conjunction with their Non-Wage Payment.  Any service payments made pursuant to Section 3.3 shall be deemed a Non-Wage Payment, and Plaintiffs shall be solely responsible for all taxes, interest and penalties due with respect to their own Non-Wage Payments.  Plaintiffs agree to and hereby do indemnify and hold harmless Defendants from and against any and all tax liabilities, interest and penalties that may be assessed or incurred as a result of not withholding money or issuing or reporting payments made under this Paragraph 3.5(C) including, but not limited to, liability for payroll taxes or deductions, income withholding taxes, including federal, state or local

13

income taxes, social security taxes, federal state or local unemployment or disability premium payments or taxes, or any other taxes which customarily are withheld from or paid with respect to wages, or any other liens, judgments, interest and/or penalties incurred on the monies paid pursuant to this Agreement or owing to, or for the satisfaction of, any liens or judgments against Plaintiffs (which Plaintiffs affirmatively represent do not exist), except that Plaintiffs shall not be liable for any contributions of FICA assessed against Defendants.

(D)     All payments to the Class Members shall be deemed to be paid solely in the year in which such payments are actually received by the Class Members. It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Class Member to additional compensation or benefits under any company bonus, contest, or other compensation or benefit plan or agreement in place during the period covered by the Agreement, nor will it entitle any Class Member to any increased retirement, 401(k) benefits or matching benefits, or deferred compensation benefits. It is the intent of this Agreement that the Net Settlement Payment provided for in this Agreement shall represent the sole payments to be made to the Class Members, and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received any portion of the Net Settlement Payment (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect at the time of payment). Plaintiffs, on behalf of the Class Members, specifically waive entitlement to such benefits and in additional consideration for the mutual covenants made in this Agreement hereby covenant not to bring any further action against Defendants or any retirement or welfare benefit plan maintained by Defendants or any of its affiliates for additional benefits as a result of any additional compensation paid as a result of this Agreement. This Agreement may be pleaded by the Defendant or by any benefit plan or fiduciary thereof as a complete and absolute defense to any such claim.

4.      **RELEASE**

4.1     **Release of Claims.**

(A)     By operation of the entry of Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement and except as otherwise provided below, all Plaintiffs only, each on their own behalf, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys fully release and discharge Defendants and all of their parents, subsidiaries, related companies and

14

affiliated entities and all of their respective officers, directors, shareholders, employees, members, managers, co-joint venture, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, individually and jointly from any and all complaints, claims, damages, charges, demands, suits or actions, whether known or unknown, in law or in equity, that the Plaintiffs ever had, now have or hereafter can, shall, or may have against any of the Defendants, that are based on acts or omissions from the beginning of time through the Effective Date of this Agreement, including but not limited to claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Americans with Disabilities Act, the Fair Labor Standards Act, the Family and Medical Leave Act of 1993, the Employee Retirement Income and Security Act, the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law, the New York City Human Rights Law, New York Labor Law, the New York State Wage Theft Prevention Act and any other federal, state or local civil rights, retaliation, discrimination or labor laws, and/or contract or tort laws, with respect to any event, matter, claim, damage or injury arising out of or in any way connected with Plaintiffs' employment or the termination of that employment from Defendants ("General Release").

Each Plaintiff acknowledges that he has executed this Agreement (which includes the General Release) after having an opportunity to consult with independent legal counsel. Each Plaintiff further acknowledges that he has read this Agreement in its entirety, that he has had reasonable time to consider it, and he has been afforded a reasonable time to consider the agreement. Each Plaintiff acknowledges that he has not relied on any representations or statements not set forth in this Agreement and is signing this Agreement voluntarily and of his own free will.

(B)     By operation of the entry of Judgment and Final Approval, and except as to such rights or claims as may be created by this Agreement and except as otherwise provided below, all NYLL Class Members, each on his or her own behalf, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys fully release and discharge Defendants and all of their parents, subsidiaries, related companies and affiliated entities and all of their respective officers, directors, shareholders, employees, members, managers, co-joint venture, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, individually and jointly, from any and all individual or class and collective action wage and

hour claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, liquidated damages, punitive damages, interest, penalties, actions, or causes of action, whether known or unknown, contingent or non-contingent, from the beginning of time through the Effective Date of this Agreement, including but not limited to all NY State wage and hour claims that were alleged or could have been alleged in the Litigation, all claims related to minimum wage violations, failure to provide wage and/or tip credit notification, tip misappropriation, unpaid wages, unpaid overtime, missed meal and rest periods, unpaid travel time, unpaid uniform reimbursements and maintenance allowances, unpaid waiting time and unrecorded time, nonpayment or inaccurate payment of tips, gratuities and wages under any state or local law, nonpayment or inaccurate payment of service charges under any state or local law, failure to pay the spread of hours premium, record keeping violations, waiting time penalties, claims for back or front pay, interest and other civil penalties, and any other claims under the New York Labor Law, and any other state, and local wage and hour law, regulation, order, opinion letter, and common law. It is agreed between the Parties that this release will have *res judicata, collateral estoppel,* claim preclusive, and/or issue preclusive effect as to all released claims made by or on behalf of any Class Member who has not submitted a valid Opt-Out Statement. In order to achieve a full and complete release of Defendants of all claims arising from or related to this Litigation, the Plaintiffs and Class Members acknowledge that this Agreement is meant to include in its effect all wage and hour claims that were or could have been asserted in the Litigation on or before the Effective Date of this Agreement, including claims that the Plaintiffs and Class Members do not know or suspect to exist in his or her favor against Defendants.

(C)  Each FLSA Class Member forever and fully releases Defendants from Released FLSA Claims. "Released FLSA Claims" means all wage and hour claims that could have been asserted under the Fair Labor Standards Act, as amended, by or on behalf of FLSA Class Members. The Released FLSA Claims include all wage and hour claims that could be asserted in this Litigation, and any wage and hour claim that could be asserted against Defendants under federal law relating to the failure to pay wages, back wages, overtime, minimum wages, all "derivative benefit claims" (*i.e.,* claims for benefits resulting from alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), interest, liquidated damages, penalties, attorneys' fees, and any other form of compensation or relief permitted under any federal laws

16

4.2 **Release of Fees and Costs for Settled Matters.** Class Counsel and Plaintiffs, on behalf of the Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs and the Class Members in the Litigation, other than those approved by the Court pursuant to Section 3.2 above. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals in the Litigation.

5. **NON-ADMISSION OF LIABILITY.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class Members. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; (b) are not, shall not be deemed to be, and may not be used as, an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not be deemed to be, and may not be used as, an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

6. **MISCELLANEOUS**

6.1 **No Communication Regarding the Lawsuit.** Defendant Peter Poulakakos will not communicate with any current or former employee regarding the terms of the settlement or the Class/Collective Action notice. If any Class Member attempts to speak with Mr. Poulakakos regarding the settlement, he will say that he cannot discuss the settlement. Mr. Poulakakos also agrees to instruct all Managers and Assistant Managers employed by Harry's that they are not to discuss the terms of the settlement or the Class/Collective Action notice with any Class Members.

6.2 **Cooperation Between the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of

17

any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

6.3   **No Publicity.** The Parties and Class Counsel agree that they will not in any manner publicize the terms of this Settlement Agreement and Release, which includes notifying any member of the media regarding the terms and conditions of the settlement or responding to media inquiries and includes posting or disseminating the terms and conditions of the settlement on any social media or Class Counsel's website. Class Counsel shall so advise Plaintiffs of this obligation. Upon Final Approval, Class Counsel will delete any mention of this case from the "current cases" section of their website. Class Counsel reserves the right to post any Westlaw/Lexis decisions on the "decisions of interest" page on their website as *Flores, et al. v. One Hanover LLC*.

6.4   **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed superseded by this Agreement. The Parties acknowledge that they have not relied on any promises, representations or discussions extrinsic to this Agreement in agreeing to execute this Agreement.

6.5   **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and the Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

6.6   **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

6.7   **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

6.8   **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

6.9   **Blue Penciling.** Following the Effective Date, if any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or

18

unenforceable, the remaining portions of this Agreement will remain in full force and effect.

6.10   **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

6.11   **Continuing Jurisdiction.**   The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction to modify any of the terms of this Agreement, including but not limited to Defendants' payment obligations hereunder.

6.12   **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any Party to insist upon the strict performance by the other Party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.13   **No Assignment.**  Class Counsel and Plaintiffs, on behalf of the Class Members, represent and warrant that they have not, and will not, assign or transfer, or purport to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

6.14   **Facsimile/Email Signatures.**  Any signature made and subsequently transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement.

6.15   **Execution in Counterparts.** This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.  This Agreement shall be binding upon each Party when each Party, or their legal representative, shall have received a counterpart hereof signed by all of the other Parties, or their legal representative, except that all Plaintiffs and Defendants shall sign this Agreement on their own behalf.

19

[Signature Page to Joint Settlement Agreement and Release]

DATED: 2 / 7 ____, 2014          By: _____

Carlos Flores

DATED: 2 / 7 ____, 2014          By: _____

Hermelindo Tendilla

DATED: 2 / 7 ____, 2014          By: _____

Rafael Aldape

DATED: 2 / 7 ____, 2014          By: _____

Francisco Delarosa-Atlatenco

DATED: 2/3 ____, 2014          By: _____

One Hannover, LLC

Title: _____

DATED: 2/3 ____, 2014          By: _____

Peter Poulakakos

DATED: 2/3 ____, 2014          By: _____

Harry Poulakakos

20