IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARLOS FLORES, HERMELINDO TENDILLA, RAFAEL ALDAPE, and FRANCISCO DELAROSA-ATLATENCO, on behalf of themselves and all others similarly situated,<br><br>    **Plaintiffs,**<br><br>  -against-<br><br>**ONE HANOVER, LLC, PETER POULAKAKOS and HARRY POULAKAKOS,**<br><br>    Defendants. | **13 Civ. 5184 (AJP)**<br><br>USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC# _____<br>DATE FILED: __6/9/14__ |

### [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The above-entitled matter came before the Court on Plaintiffs' Motion for Final Approval of Class Action Settlement ("Motion for Final Approval").

Plaintiffs Carlos Flores, Hermelindo Tendilla, Rafael Aldape, and Francisco Delarosa-Atlatenco, commenced the instant action on July 25, 2013 as a putative class action under Federal Rule of Civil Procedure 23 and as a collective action under 29 U.S.C. § 216(b), bringing claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). *Flores v. One Hanover, LLC, Peter Poulakakos and Harry Poulakakos,* 13 Civ. 5184 (APJ). Specifically, Plaintiffs asserted violations of the FLSA and NYLL regarding: (1) minimum wages; (2) overtime pay; (3) spread of hours pay; (4) wage notices; (5) proper statements of wages; (5) misappropriated tips; and (6) unlawful deductions. Declaration of Brian S. Schaffer in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Schaffer Decl.") ¶¶ 4-25.

On December 10, 2013, the parties participated in a mediation with Ruth Raisfeld, Esq., an experienced employment law mediator. At the mediation, the parties were able to better assess

the strengths and weaknesses of their case and, after ten hours of highly contested negotiations, were ultimately able to reach a class wide settlement of $600,000. *Id.* ¶¶ 18-21. On February 7, 2014, the terms of the settlement, were memorialized in a formal Joint Settlement Agreement and Release ("Settlement Agreement"), fully executed by the parties. *Id.* ¶ 25.

On February 18, 2014, the Court held a telephone conference with the parties to discuss the taxability of class members' settlement awards. *Id.* During the conference, the parties agreed that 50% of class members' settlement awards would be classified as a wage payment reported on W-2 and 50% would be classified as a non-wage payment reported on a form 1099. *Id.* After the telephone conference, the Court issued an order granting Plaintiffs' motion for preliminary approval, directed that notices be sent to class members, and set June 9, 2014 as the date for the Fairness Hearing. *Id.* ¶ 31.

On October 21, 2013, the Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein (the "Class" or the "Class Members"), conditionally certifying the settlement class, retaining Fitapelli & Schaffer, LLP as Class Counsel, and authorizing notice to all Class Members. *See* Docket No. 73.

On March 28, 2014, the Claims Administrator sent the Court-approved Notice ("Class Notice") by first-class mail to each Class Member at their last known address with additional and updated data from Class Counsel (re-mailing of returned Notices for which new addresses could be located). Schaffer Decl., Ex. B, Declaration of Christopher M. Walsh, Esq. Re: Administration of Class Settlement ("Walsh Decl.") ¶6. The Notice informed class members of the terms of the settlement, including: (1) their right to opt out or object to the NYLL portion of the settlement;  (2) their right to opt-in to the FLSA portion of the settlement and receive their FLSA settlement award; and (3) their right to appear at the fairness hearing. Schaffer Decl. ¶ 33.

2

The Notice also informed Class Members of Plaintiffs' request for a total of $12,000 in service awards ($3,000 to each named Plaintiff), as well as Class Counsel's intention to seek up to one-third of the settlement fund for attorneys' fees, and reimbursement of out-of-pocket expenses. Schaffer Decl., Ex. C, Settlement Notice.

On May 27, 2014, Plaintiffs filed a Motion for Final Approval seeking final approval of the Settlement Agreement, final certification of the Class, final certification of the FLSA settlement, approval of Plaintiffs' requests for service awards to the named Plaintiffs, approval of Class Counsel's request for fees and costs, and approval of Plaintiffs' proposed final settlement procedure.  Defendants took no position with respect to the motion, and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on June 9, 2014.  No Class Member objected to the settlement at the hearing.

Having considered the Motion for Final Approval and the supporting declarations, the oral argument presented at the June 9, 2014 fairness hearing, and the complete record in this matter, for the reasons set forth therein and stated on the record at the June 9, 2014 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**<u>CERTIFICATION OF THE SETTLEMENT CLASS</u>**

1.      The Court certifies the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes:

> All Tipped Workers[1] who work or have worked at Harry's between July 25, 2007 and December 31, 2013 as defined in the Settlement Agreement.

---

[1]      "Tipped Workers" is defined by the settlement agreement as individuals working at One Hanover, LLC as Servers, Bartenders, Runners, Barbacks, Captains, Delivery Persons, and Bussers and similarly situated employees. Schaffer Decl., Ex. A, Settlement Agreement, ¶ 1.6.

## APPROVAL OF THE SETTLEMENT AGREEMENT

2.      The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

3.      "Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate." *Beckman v. KeyBank, N.A.*, No. 12 Civ. 7836 (RLE), 2013 WL 1803736, at *4 (S.D.N.Y. Apr. 29, 2013) (quoting Fed. R. Civ. P. 23). Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008). "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

4.      In order to approve a class action settlement, a district court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate. *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013) (internal quotations omitted). "Federal courts within this Circuit make the fairness determination based upon 'two types of evidence:' (1) substantive and (2) procedural." *Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *11 (S.D.N.Y. Nov. 30, 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). "Courts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *4 (S.D.N.Y. Dec. 13, 2011) (quoting *Wal-Mart Stores*, 396 F.3d at 116); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019, at *2

4

(S.D.N.Y. July 6, 2012) (approving settlement where terms are fair, reasonable, adequate, and not a product of collusion).

**Procedural Fairness**

5.     The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations after experienced counsel had evaluated the merits of Plaintiffs' claims, and is untainted by collusion.   A court determines a settlement's procedural fairness by looking at the negotiating process leading to settlement. *See Westerfield v. Washington Mut. Bank*, No. 06 Civ. 2817 (JMA), 2009 WL 5841129, *4 (E.D.N.Y. Oct. 8, 2009) (approving a settlement that "…was the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel with significant experience litigating wage and hour class actions…"); *Matheson*, 2011 WL 6268216, at *4 (citing *Wal-Mart Stores*, 396 F.3d at 116); *see also Beckman,* 2013 WL 1803736, at *4 (same).  "A 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Matheson*, 2011 WL 6268216, at *4 (quoting *Wal-Mart Stores*, 396 F.3d at 116).

6.     Additionally, whereas here, the settlement is the by-product of a mediation before an experienced employment law mediator, there is a presumption of fairness and arm's-length negotiations. *See, e.g., Tiro*, 2013 WL 4830949, at *5 (finding that settlement negotiations were procedurally fair where the parties were represented by knowledgeable counsel, engaged in extensive and contested discovery, and had their negotiations overseen by an experienced mediator); *Beckman,* 2013 WL 1803736, at *4 ("These arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process.") (quoting *Wal-Mart Stores*, 396

F.3d at 116).

**Substantive Fairness**

7.      The settlement is substantively fair because its terms are fair, adequate, and reasonable pursuant to the analytical framework set forth by the Second Circuit in *Grinnell* for evaluating the substantive fairness of a class action settlement. *Grinnell Corp.*, 495 F.2d 448. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;  (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463; *see also Wal-Mart Stores*, 396 F.3d at 117. These factors ought not be applied in a formulaic manner. Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell*, 495 F.2d at 468. Here, all of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement.

*Litigation Through Trial Would Be Complex, Costly, and Long (Grinnell Factor 1).*

8.      To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation. *Tiro*, 2013 WL 4830949, at *5. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). This case is no

6

exception, with 442 Class Members with fact intensive claims under both federal and state law. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### *The Reaction of the Class Has Been Positive (Grinnell Factor 2).*

9.      Where no class members opt-out of or object to the settlement, the lack of opposition supports court approval of the settlement. *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012). Here, Class Members have shown an enthusiastic response to the settlement. No Class Member has objected to the settlement and or opted out. In addition, 31 percent of FLSA settlement class opted-in to the settlement. "This favorable response demonstrates that the class approves of the settlement and supports final approval." *Matheson*, 2011 WL 6268216, at *5 (citing *Johnson*, 2011 WL 4357376, at *9).

### *Discovery has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (Grinnell Factor 3)*

10.     Under the third *Grinnell* factor, the question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)). "The Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make ... an appraisal' of the Settlement." *Sewell*, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012) (quoting *In re Austrian*, 80 F. Supp. 2d at 176).

11.     The parties' discovery here meets this standard. Although preparing this case through trial would require hundreds of hours of discovery for both sides, the discovery already completed allowed the parties to recommend settlement with a thorough understanding of the claims and defenses. Such knowledge of the "strengths and weaknesses of their cases" supports

7

a finding that the Settlement Agreement is the result of fair and reasonable negotiation. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (holding that when counsel understands the "strengths and weaknesses of their cases" through extensive discovery, this knowledge supports final approval). In fact, courts often grant final approval of class settlements in cases where the parties conducted the same amount or even less discovery than the amount accomplished in this case. *See, e.g.*, *Matheson*, 2011 WL 6268216, at *5 (stating that an efficient, informal exchange of information, and participation in a day-long mediation allowed the parties to weigh the strengths and weaknesses of their claims); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693(PGG), 2013 WL 1832181, at *4 (S.D.N.Y. Apr. 30, 2013) (finding that an informal exchange of information was "sufficient discovery to weigh the strengths and weaknesses of [plaintiffs'] claims"). Therefore, this factor favors final approval.

### Plaintiffs Would Face Real Risks if the Case Proceeded (Grinnell Factors 4 and 5)

12.     In evaluating the risks of establishing liability, a court must "assess the risks of litigation against the certainty of recovery offered by the Settlement." *In re Telik*, 576 F. Supp. 2d at 579. Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing," and that "[l]itigation inherently involves risks." *Wal-Mart Stores*, 396 F.3d at 118. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Matheson*, 2011 WL 6268216, at *5 (quoting *In re Ira Haupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969)). Here, while Plaintiffs believe that they could ultimately establish Defendants' liability, this would require significant factual development and favorable outcomes at trial and on appeal, both of which are inherently uncertain and lengthy. Class Counsel are experienced and realistic, and understand that the resolution of liability issues, outcome of the trial, and inevitable appeals process are inherently uncertain in terms of outcome and duration.

*See Beckman*, 2013 WL 1803736, at *6. The proposed settlement alleviates these uncertainties. These factors therefore weigh in favor of final approval.

### *Establishing a Class and Maintaining it Through Trial Would Not Be Simple (Grinnell Factor 6)*

13.     The risk of obtaining class certification and maintaining it through trial is also present. Defendants may obtain leave to appeal the Court's Rule 23 Order and would likely move for decertification of the FLSA collective after the conclusion of discovery, both requiring extensive briefing. If the class is decertified, Plaintiffs would be forced to make a second motion for certification following additional discovery, which Defendants would similarly oppose. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *7 (S.D.N.Y. Oct. 2, 2013). This factor also favors final approval.

### *Defendants' Ability to Withstand a Greater Judgment is in Doubt (Grinnell Factor 7)*

14.     Even if Defendants could afford to pay more, a defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Matheson*, 2011 WL 6268216, at *5 (quoting *Frank*, 228 F.R.D. at 186; *In re Austrian*, 80 F. Supp. 2d at 178 n.9).

### *The Settlement Fund is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)*

15.     The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Tiro*, 2013 WL 4830949, at *9 (quoting *Matheson*, 2011 WL 6268216, at *5). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

completion.'" *Matheson*, 2011 WL 6268216, at *5 (quoting *Frank*, 228 F.R.D. at 186). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2; *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *Gilliam v. Addicts Rehab Crt. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of LA v. A.C.L.N., Ltd.*, No. 01 Civ. 11814 (MP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).

16.     Here, the $600,000 settlement provides much more than a fraction of the potential recovery. The settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiffs succeeded on all claims at trial, and survived an appeal. Thus, "weighing the benefits of the settlement against the risks associated with proceeding in the litigation," the settlement amount achieved in the instant action is more than reasonable. *Johnson*, 2011 WL 4357376, at *11; *see Lovaglio*, 2012 WL 2775019, at *2 (approving settlement where "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation").

## APPROVAL OF THE FLSA SETTLEMENT

17.     The Court hereby approves the FLSA settlement.

18.     The standard for approval of an FLSA settlement is significantly lower than for a

Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement. *Yuzary*, 2013 WL 5492998, at *7 (citing *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Id.* (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353-54, 1353 n.8 (11th Cir. 1982)).

19.     As discussed above, the instant settlement was the result of contested litigation and arm's length negotiation. The parties were represented by counsel experienced in wage and hour law, engaged in strenuous litigation, exchanged extensive discovery and damages calculations, and conducted months of vigorous negotiations in an effort to reach the settlement. Therefore, FLSA approval is warranted. *See Beckman*, 2013 WL 1803736, at *7 (granting final approval of FLSA settlement); *Yuzary*, 2013 WL 5492998, at *8 (same); *Matheson*, 2011 WL 6268216, at *6 (same).

## AWARD OF SERVICE FEES TO THE NAMED PLAINTIFF

20.     The Court finds reasonable a service award of $3,000 to each of the named Plaintiffs. This amount shall be paid from the settlement fund.

21.     Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny, and that "[service] awards are particularly appropriate in the employment context" where "the plaintiff is often a former or current employee of the defendant, and thus … he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Tiro*, 2013 WL 4830949 at *10; *Velez v. Majik   Cleaning Serv.*, No. 03 Civ. 8698 (SAS)(KNF), 2007 WL 7232783, at *4

(S.D.N.Y. June 25, 2007); *see also Sewell*, 2012 WL 1320124, at *14 ("[P]laintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer ... [and] being blacklisted as 'problem' employees."). Accordingly, "service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Tiro,* 2013 WL 4830949, at *11 (quoting *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *9 (S.D.N.Y. Mar. 3, 2010)).

22.    The named Plaintiffs provided significant services to the Class and undertook what they believed to be significant risks by bringing this case. The services provided by the named Plaintiffs included, but were not limited to, informing counsel of the facts initially and as the case progressed, providing counsel with relevant documents in their possession, informing putative Class Members of the lawsuit and encouraging them to participate, assisting counsel to prepare for mediation, and reviewing and commenting on the terms of the settlement. As such, the named Plaintiffs' actions exemplify the very reason service fees are awarded. *See Frank,* 228 F.R.D. at 187 (recognizing the important role that plaintiffs play as the "primary source of information concerning the claim."); *Tiro,* 2013 WL 4830949, at *11 (recognizing efforts of plaintiffs including informing counsel of the facts initially and as the case progressed, providing counsel with relevant documents in their possession, informing putative Class Members of the lawsuit and encouraging them to participate, appearing for depositions, preparing declarations, aiding counsel in the submission of their Rule 23 Motion, assisting counsel to prepare for mediation and settlement discussions, and reviewing and commenting on the terms of the settlement).

23.     Moreover, the $3,000 service awards requested here for each of the named Plaintiffs is reasonable and well within the range awarded by Courts in similar matters. *See, e.g., Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF)(DCF), 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $13,000 to class representatives in wage and hour action); *Lovaglio*, 2012 WL 2775019, at *4 (approving service awards of $10,000 to class representatives in wage and hour action); *Matheson*, 2011 WL 6268216, at *9 (approving a service award of $45,000 for a class representative in a wage and hour action); *Yuzary*, 2013 WL 5492998, at *8-9 (approving service awards of $10,000 for class representatives in wage and hour action); *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145 (KMW), 2014 WL 185628, at *11 (S.D.N.Y. Jan. 14, 2014) (awarding $15,000 in service awards for class representatives in wage and hour action).

## CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE-THIRD OF THE SETTLEMENT FUND

24.     On October 21, 2013, the Court appointed Fitapelli & Schaffer, LLP ("F&S"), as Class Counsel.

25.     The Settlement Agreement and Court-approved Notice sent to all Class Members provide that Class Counsel will apply to the Court for attorneys' fees in the amount of $200,000 (33 1/3% of the settlement). No Class Member has objected to this request, which provides support for Class Counsel's fee request.

26.     The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the class and to representing the class's interests. Class Counsel have committed substantial resources to prosecuting this case.

27.     The Court hereby grants Plaintiffs' request for attorneys' fees and awards Class Counsel $200,000 which is one third of the settlement fund. Class Counsel's request for one

third of the fund "is reasonable and consistent with the norms of class litigation in this circuit." *Johnson*, 2011 WL 4357376, at *19.

**Award of Fees And Costs To Class Counsel**

28.    Although there are two ways to compensate attorneys for successful prosecution of statutory claims, the lodestar and percentage of the fund method, "[t]he trend in this Circuit is to use the percentage of the fund method in common fund cases like this one." *Matheson*, 2011 WL 6268216, at *7 (citing *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores*, 396 F.3d at 121.

29.    "Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill [that role] must be adequately compensated for their efforts." *Reyes v. Altamarea Grp. LLC*, No. 10 Civ. 6451(RLE), 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011); *see also Sand*, 2010 WL 69359, at *3 (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel").

30.    In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). The FLSA and the NYLL are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work"). "Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes." *Matheson*, 2011 WL

6268216, at *8 (citations omitted).  "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk."  *Id.*  (citations omitted). Consequently, courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discouraging future misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).  Class actions are also an invaluable safeguard of public rights.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

31.     Class Counsel's request for one-third of the fund is reasonable and "consistent with the norms of class litigation in this circuit."  *McMahon*, 2010 WL 2399328, at *9.  Courts in this Circuit have repeatedly granted requests for one-third of the fund in cases with settlement funds similar to this one.  *See, e.g., Lovaglio*, 2012 WL 2775019, at *3 (awarding one-third of the total settlement amount in a wage and hour class action, and stating that "the amount is fair and reasonable," and "consistent with the trend in this Circuit.").  Further, courts in this Circuit have routinely approved requests for one-third of the fund in cases with settlement funds substantially larger than the present action.  *See, e.g., Beckman*, 2013 WL 1803736, at *14 (awarding one-third of $4.9 million fund in wage and hour action, and stating that "the requested fee award appears to be reasonable"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185-86 (W.D.N.Y. 2011) (awarding one-third of $42 million settlement fund).

32.     Common fund recoveries are contingent on a successful litigation outcome. "Such contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation ... and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *Capsolas*, 2012 WL 4760910, at *8 (internal quotation marks omitted). Many

15

individual litigants, including the Class Members here, "cannot afford to retain counsel at fixed hourly rates ... yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Id.*

33.     The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $4,232.26. "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." *Matheson*, 2011 WL 6268216, at *9 (citing *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n. 3 (S.D.N.Y. 2003)). Here, the out of pocket expenses incurred by Class Counsel were incidental and necessary to the representation of the Class, and should be approved. Schaffer Decl. ¶ 63.

34.     The reimbursement of Class Counsel's litigation costs and expenses shall be paid from the settlement fund.

<h2 style="text-align:center"><b>FINAL SETTLEMENT PROCEDURE</b></h2>

35.     If no party seeks an appeal of the Court's Final Order and Judgment, the "Effective Date" of the settlement will be thirty calendar days following the Court's entry of this Order. If there is an appeal of the Court's decision granting final approval, the "Effective Date" will be upon the day after all appeals are resolved in favor of final approval. Within fifteen (15) days of the Effective Date, the Claims Administrator will distribute the funds in the settlement account by making the following payments in the order below:

36.     Paying Class Counsel one-third of the fund ($200,000);



37.     Reimbursing Class Counsel for litigation costs and expenses $4,232.26

38.     Paying the Claims Administrator's fee;

39.     Paying the service awards of $3,000 each to the named Plaintiffs; and

40.     Paying the remainder of the fund to Qualified Class Members in accordance with the allocation plan described in the Settlement Agreement.

41.     The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

42.     Upon the Effective Date, this litigation shall be dismissed with prejudice and all members of the NYLL Class who have not excluded themselves from the settlement shall be permanently enjoined from pursuing and/or seeking to reopen NYLL claims that have been released pursuant to the settlement.

43.     Upon the Effective Date, this litigation shall be dismissed with prejudice and all members of the FLSA Class who opted-in to the settlement shall be permanently enjoined from pursuing and/or seeking to reopen FLSA claims that have been released pursuant to the settlement.

It is so ORDERED this ____ day of _____, 2014

_____
Hon. Andrew J. Peck,
United States Magistrate Judge

HON. ANDREW J. PECK
United States Magistrate Judge
Southern District of New York

Copy ECF: All Counsel

BY ECF